UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**William P. Sims, Jr.**

**v.**                                        Case No. 12-cv-91-PB
                                              Opinion No. 2013 DNH 115

**American Postal Workers Accident
Benefit Association et al.**

## MEMORANDUM AND ORDER

This is an ERISA case in which William Sims, a former
employee of the American Postal Workers Accident Benefit
Association ("APWABA"), is challenging the amount of the pension
that he was awarded pursuant to the APWABA Pension Plan.  The
parties have filed cross motions for judgment on the
administrative record.

## I.  BACKGROUND[1]

The APWABA is a non-profit accident benefit association
organized by United States postal employees.  The association

---

[1] The background facts are drawn in part from the Joint
Statement of Material Facts and Supplemental Joint Statement of
Material Facts, submitted by the parties pursuant to Local Rule
9.4(b).  Doc. Nos. 45, 64.

provides for the payment of benefits to its members and their

beneficiaries in the case of temporary disability,

dismemberment, or death resulting from a covered accident.  The

APWABA provides a pension plan for its full-time officers and

employees.

A.    **The Prototype Plan and Adoption Agreement**

The APWABA pension plan (the "Plan") is governed by the

"Invesmart, Inc. Prototype Non-Standardized Non-Integrated

Defined Benefit Prototype Plan" (the "Prototype Plan").  Def.

Doc. No. 3.[2]  The Prototype Plan anticipates that the employer

will define certain elective provisions in a separate "Adoption

Agreement."  Def. Doc. No. 3 § 1.6.  Sims' APWABA pension is

governed by the "Adoption Agreement for Invesmart, Inc. Non-

Standardized Non-Integrated Defined Benefit Pension Plan" (the

"Adoption Agreement") signed by Sims and James McCarthy on

November 18, 2005.  Def. Doc. No. 2.  The Adoption Agreement

adopts the terms of the Prototype Plan and sets forth specific

provisions governing Sims' pension.  The Prototype Plan further

provides that it, the Adoption Agreement, and any amendments

thereto shall comprise the Plan.  Def. Doc. No. 3 § 1.57.

---

[2] Plaintiff's and defendants' documents can be found in the
administrative record.

According to the Adoption Agreement, Sims is entitled to receive three percent of his "Average Compensation" for each year of service credited.  Def. Doc. No. 2 § 21.  The Adoption Agreement defines "Average Compensation" as "the average of the Participant's Compensation during the Averaging Period that falls within the Participant's Compensation History."  Id. § 20. The "Averaging Period" is the three consecutive "Measuring Periods" that provide the highest average compensation.  Id. § 20(b).  The "Measuring Period" is the "Plan Year," which in turn is defined as a twelve consecutive month period beginning on January 1st and ending on December 31st.  Id. §§ 7, 20.  The Adoption Agreement defines "Compensation" as "[w]ages, tips and other compensation on Form W-2."  Id. § 19.

The Prototype Plan authorizes the APWABA to appoint a Plan Administrator and provides that if an Administrator is not appointed, the APWABA will be the Administrator.  Def. Doc. No. 3 § 2.2.  The Plan Administrator has the "power and discretion to construe the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan."  Id. § 2.4.  Any such determination by the Administrator is "conclusive and binding

3

upon all persons."   Id.

Pursuant to section 2.11 of the Prototype Plan, an employee who has been denied a benefit by decision of the Administrator is entitled to request a hearing for further consideration of his or her claim.   Id. § 2.11.

Article VIII of the Prototype Plan grants the APWABA the right to amend the Plan, subject to certain limitations.   Def. Doc. No. 3 § 8.1(a).   The APWABA may change the options in the Adoption Agreement or add an addendum to the Adoption Agreement if the addendum is "specifically permitted pursuant to the terms of the Plan."   Id. § 8.1(b).   No amendment to the Plan is effective if it "causes any reduction in the amount credited to the account of any Participant."   Id. § 8.1(d).

**B.   Sims' Pension Benefit**

Sims served on the APWABA Board of Directors from September 1, 1998 through August 31, 2006.   He served as the Assistant National Director from September 1, 1998 through January 2004 and the National Director from February 2004 through August 31, 2006.   Sims was voted out of office and left the Board on August 31, 2006.

4

Sims participated in the ABWABA pension plan.  According to the Adoption Agreement, Sims is entitled to receive three percent of his average compensation for each year of service. Def. Doc. No. 2 § 21.  Sims completed eight years of full-time service with the APWABA and, pursuant to the version of the Plan that was in effect when he was terminated, he received another five years of pension credit based on his prior service with the United States Postal Service.  Sims was thus entitled to thirteen years of service credit under the Plan.  Both sides agree that Sims is entitled to a pension, but disagree about the proper method of calculating the amount of his pension.

Prior to Sims' retirement, the Plan had been interpreted two different ways, according to Thomas Tierney, the Plan's former actuary.  Prior to July 3, 2003, all benefits were determined, with a few exceptions, using a Plan participant's average annual salary during the thirty-six month period immediately preceding his or her retirement.  Pl. Doc. No. 9 at 151.  After July 3, 2003, Tierney used a new procedure to determine average annual salary.  The new procedure was developed because in 2003 Hank Greenberg, the national director of the APWABA in 2003, wanted to increase a particular person's

pension. Pl. Doc. No. 2 at 46. Tierney advised Greenberg that the plan language was flexible and that he had the "administrative authority" to interpret the Plan differently. Id. at 47. Accordingly, Greenberg changed the interpretation of the Plan and began to "annualize" a participant's wages in his or her last calendar year of service. Thus, if a participant worked only part of his last calendar year of employment, Tierney would calculate the average compensation as if he or she had worked the whole year. Pl. Doc. No. 2 at 47; Pl. Doc. No. 9 at 151. Greenberg adopted the "annualization" procedure because it generally produced larger benefits. Pl. Doc. No. 9 at 151.

Tierney used the annualization method to calculate the pensions of at least four individuals, including Greenberg. Pl. Doc. No. 2 at 48-50. Tierney never presented the annualization method to the Board or formally amended either the Plan or the Adoption Agreement. Tierney testified that he intended to present the new method to the Board and delegates to the 2006 convention, but that the convention was adjourned prior to his presentation. Pl. Doc. No. 2 at 52-53. Tierney was terminated as the Plan's actuary and replaced by Lloyd Katz in February 2007.

6

On August 14, 2006, shortly before Sims' term expired,
Tierney prepared a report summarizing APWABA officer pensions
for the APWABA national convention in Philadelphia.  At the
bottom of the report, Tierney listed two APWABA officers who
were accruing pensions as of August 14, 2006, but had yet to
receive payments.  Sims was one of the two current officers
listed on this report.  The report states that "William P. Sims,
Jr. [the APWABA National Director at the opening of tonight's
Convention] had then accrued a fully vested pension with an
annual rate of payment of $41,109.48 . . . ."  Pl. Doc. No. 9 at
114.

On November 29, 2010, in a letter addressed to the
president of the APWABA, Sims requested his pension payments
beginning on March 1, 2011.  Pl. Doc. No. 9 at 113.  He also
complained that Katz, the Plan's new actuary, had determined
that he would be receiving over three-hundred dollars a month
less than Tierney had determined he was entitled to in his
August 14, 2006 report.

In a letter dated December 17, 2010, Katz responded to
Sims' November 29, 2010, request.  Pl. Doc. No. 9 at 116–117.
He explained that Sims' three consecutive years with the highest

average compensation were 2004 ($74,280.50), 2005 ($147,223.88)[3],

and 2006 ($65,207.15).  He then determined that Sims' average

compensation for those three years was $95,570.51.  Under the

formula outlined in the Agreement, Katz reported that Sims was

entitled to three percent of his average compensation for each

year of service credited.  With thirteen years of service

credit, he thus noted that Sims was entitled to a yearly pension

of $37,272.50 rather than the higher amount noted in Tierney's

report.  Id. at 117.

C.   **Procedural History**

Both Sims and the APWABA agree that Sims is entitled to a

pension.  Sims argues that his 2006 earnings should be

calculated using the "annualization" method used by Tierney.

The APWABA contends that the terms of the Plan state that only

actual wages, as reflected on a W-2 form, count towards

compensation and stands by Katz's computation of Sims' benefits

as described in the December 17, 2010, letter.

After several months passed without the issue being

---

[3] Katz testified at the administrative hearing that Sims'
unusually large income in 2005 was due to underpayment in prior
years that was made up in 2005.  Pl. Doc. No. 2 at 102-03.
Pursuant to the terms of the Plan, this income was included in
the Plan's calculation of Sims' average compensation.

resolved, Sims wrote a letter of complaint to the Secretaries of

the United States Treasury Department and the United States

Department of Labor.  In the letter, a copy of which was sent to

the APWABA by e-mail on March 8, 2011, Sims asked that the Plan

hold a hearing on his pension request.  Sims renewed his request

for a hearing in a March 16, 2011, e-mail to the Plan's actuary,

Lloyd Katz.  The Plan received Sims' formal pension application

on April 13, 2011.  On May 4, 2011, Michael A. Feinberg,

attorney for the ABWABA, informed Tierney and Sims that the Plan

would hold a hearing on the pension issue on May 11, 2011.  Sims

refused to attend the hearing under protest and instead filed

suit in the District Court for the Western District of

Pennsylvania on November 2, 2011.  Doc. No. 1.  The APWABA moved

to transfer the case of the District of New Hampshire.  Doc. No.

2.  Its request was granted and the case was transferred to this

court on March 7, 2012.  Doc. No. 22.

On November 13, 2012, Sims filed a motion to remand for an

administrative hearing.  Doc. No. 55.  I granted his motion on

December 18, 2012 and remanded the case for an administrative

hearing pursuant to the procedures outlined in the Plan.  Doc.

No. 60; Def. Doc. No. 3 § 2.11.

The APWABA held a hearing on January 15, 2013 in front of
David E. Daniel, the Plan Administrator.  The issue before the
Administrator was whether Sims' actual 2006 salary as listed on
his W-2 or the hypothetical salary he would have received had he
worked the entire year should be used to calculate his pension.[4]
Pl. Doc. No. 1 at 2.  At the hearing, Sims was assisted by
Tierney.  Feinberg represented the ABWABA.  Sims and the APWABA
entered several exhibits and Tierney, Sims, Katz, Plan employee
Kelly O'Neill, and Plan accountant Edward Manzi testified.  Doc.
No. 65 at 14.

On February 19, 2013, Daniel issued a decision ruling that
only wages actually earned count towards the calculation of
Sims' pension.  Pl. Doc. No. 1.  Daniel found that Tierney's
concept of annualization has no basis in the Plan documents and
was never presented to the Board, the APWABA (the Plan sponsor),
or the 2006 convention and, therefore, the annualization concept
was never properly adopted as a Plan amendment.  Id.

---

[4] Tierney and Sims also wanted to address Tierney's attorney's
fees incurred defending a lawsuit in New Hampshire District
Court brought by the APWABA at the hearing.  Daniel decided that
this issue was not properly before him and declined to address
it.  Pl. Doc. No. 1 at 2 n.5.

Having exhausted his administrative remedies, Sims returned to this court for relief.

## II.  STANDARD OF REVIEW

The standard of review in an ERISA case differs from that in an ordinary civil case, where summary judgment is designed to screen out cases that raise no trial-worthy issues.  See, e.g., Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005).  "In the ERISA context, summary judgment is merely a vehicle for deciding the case" in lieu of a trial.  Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006). Rather than consider affidavits and other evidence submitted by the parties, the court reviews the denial of ERISA benefits based "solely on the administrative record," and neither party is entitled to factual inferences in its favor.  Id.  Thus, "in a very real sense, the district court sits more as an appellate tribunal than as a trial court" in deciding whether to uphold the administrative decision.  Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002).

Where, as here, an ERISA benefits plan gives its administrator discretion to decide whether an employee is

11

eligible for benefits, "the administrator's decision must be upheld unless it is 'arbitrary, capricious, or an abuse of discretion.'"  Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005) (quoting Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998)); see Conkright v. Frommert, 559 U.S. 506, 509 (2010) ("an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion"); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). This standard is "generous" to the administrator, but "is not a rubber stamp."  Wallace v. Johnson & Johnson, 585 F.3d 11, 15 (1st Cir.2009).  The administrator's decision must be "reasoned and supported by substantial evidence."  Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009).  "Evidence is substantial if it is reasonably sufficient to support a conclusion."  Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008) (quoting Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)).  "Evidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports the decision."  Wright, 402 F.3d at 74.

In ERISA cases, "often the entity that administers the
plan, such as an employer or an insurance company, both
determines whether an employee is eligible for benefits and pays
benefits out of its own pocket." Metro. Life Ins. Co. v. Glenn,
554 U.S. 105, 108 (2008).  This dual role creates a structural
conflict of interest.  The presence of such a conflict, however,
does not change the standard of review; rather, it "should be
weighed as a 'facto[r] in determining whether there is an abuse
of discretion.'"  Id. at 115 (quoting Firestone, 489 U.S. at
115).

    "[U]nder certain circumstances, [a plan administrator's
conflict can] be accorded extra weight in the court's analysis."
Cusson, 592 F.3d at 224.  "The conflict of interest at issue . .
. should prove more important (perhaps of great importance)
where circumstances suggest a higher likelihood that it affected
the benefits decision." Metro. Life Ins. Co., 554 U.S. at 117.
On the other hand, "[i]t should prove less important (perhaps to
the vanishing point) where the administrator has taken active
steps to reduce potential bias and to promote accuracy."  Id.
The claimant "bears the burden of showing that the conflict
influenced [the administrator's] decision."  Cusson, 592 F.3d at

225.  In some cases, the conflict "is so severe that giving it
sufficient weight as a 'factor' . . . requires giving no
deference to the conflicted decision maker."  Janeiro v.
Urological Surgery Prof'l Ass'n, 457 F.3d 130, 142 (1st Cir.
2006).

      For reasons that I describe in detail below, I determine
that Sims cannot prevail even if I give no deference to the Plan
Administrator's decision.  Thus, I need not determine whether
the Plan Administrator was operating under a conflict of
interest that would ordinarily prevent me from giving the usual
deference to his rulings.


### III.  ANALYSIS

      Sims' argument for a higher pension is premised on his view
that the Plan should have "annualized" his earnings for 2006 by
increasing the wages reported on his Form W-2 by the additional
amount that he would have earned if he had worked for the full
year.  The short answer to this argument is that his claim is
foreclosed by the plain language of the relevant Plan documents.

      According to the "Adoption Agreement," Sims is entitled to
receive three percent of his "Average Compensation" for each

14

year of service credited.  Def. Doc. No. 2 § 21.  The Adoption

Agreement defines "Average Compensation" as "the average of the

Participant's Compensation during the Averaging Period that

falls within the Participant's Compensation History."  Id. at §

20.  The "Averaging Period" is the three consecutive "Measuring

Periods" which provide the highest average compensation.  Id.

The "Measuring Period" is the "Plan Year," which in turn is

defined as a twelve consecutive month period beginning on

January 1st and ending on December 31st.  Id. at §§ 7, 20.  The

Adoption Agreement defines "Compensation" as "[w]ages, tips and

other compensation on Form W-2."  Id. at § 19.

    Sims contends that the phrase "[w]ages, tips and other

compensation on Form W-2" is ambiguous because it does not

specify whether the wages are "actual" wages or "annualized"

wages.  I reject this argument.  The clear and unambiguous

language of the Adoption Agreement refers to actual wages, as

reflected on Form W-2, and not hypothetical wages.  Sims'

contention - that the Adoption Agreement supports a compensation

figure derived from annualizing wages that he would have earned

had he worked the entire year - does not comport with the clear

definition of compensation in the Adoption Agreement.

Sims also seeks to support his claim by pointing to the fact that the APWABA previously construed the Plan to entitle other individuals to the benefit of "annualization."  This argument is also a non-starter.  The Plan allows the APWABA to amend the Plan, but the Plan was never amended to reflect the "annualization" methodology.  See Coffin v. Bowater Inc., 501 F.3d 80, 86 (1st Cir. 2007) (ERISA requires amendment of an ERISA plan to be made pursuant to a written document).  The fact that the APWABA interpreted the Plan incorrectly in the past does not entitle Sims to the benefit of that incorrect interpretation.

Sims asserts three additional arguments to support his claim to have his 2006 wages annualized, none of which have merit.  First, Sims asserts that the Plan's refusal to annualize his wages violates ERISA's "anti-cutback" rule.  ERISA states that, "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."  29 U.S.C. § 1054(g)(1).  This argument fails because Sims never accrued a right to the higher pension payments he seeks.  The fact that an Administrator misconstrued Plan language in the past does not entitle Sims to benefit from the Administrator's error.

16

Second, Sims points to several perceived procedural
deficiencies during the hearing, including Daniel's refusal to
produce documents and witnesses that Sims requested, his refusal
to hear Sims' request for expenses, allowing Katz's testimony to
"wander astray and falsely accuse Tierney of practice errors,"
and his ex parte meeting with the APWABA after the hearing.
Doc. No. 66 at 6.  These procedural problems do not entitle him
to relief.  Sims has no right to compel the Plan to produce
witnesses and there is nothing in the record to suggest the Plan
is holding back documents.  Sims alludes to a 2003 Adoption
Agreement that is not in the record, but fails to provide any
evidence that the prior agreement is materially different from
the agreement that was in effect when he was terminated.  Sims
has failed to explain how any of the Plan Administrator's other
alleged errors could affect my determination that he is not
entitled to have his 2006 wages annualized.  Thus, none of the
alleged errors entitle Sims to the relief he seeks.

Finally, for the first time during oral argument on the
present motions, Sims suggested, in a conclusory manner, that
the APWABA is estopped from calculating his pension without
annualizing his income because Tierney, as Plan actuary,

17

produced a report for the APWABA on August 14, 2006 that
calculated his pension using the annualization method.

In Cigna Corp. v. Amara, 131 S.Ct. 1866, 1881 (2011), the
Supreme Court considered the limits of a court's power to award
a plan participant "other equitable relief" pursuant to Section
502(a)(3) of ERISA.  In addressing this general issue, the court
noted in dictum that "when a court exercises its authority under
§ 502(a)(3) to impose a remedy equivalent to estoppel, a showing
of detrimental reliance must be made."  Id.  Here, Sims has not
presented a credible argument that he relied on the August 14,
2006, document in any way.  He did not decide to leave his job
in reliance on the August 14th report.  Instead, he was voted
out of office and left the Board on August 31, 2006.

Furthermore, the First Circuit has noted that estoppel
cannot be applied to vary the terms of unambiguous plan
documents.  Livick v. The Gillette Co., 524 F.3d 24, 31 (1st
Cir. 2008).  The Plan language clearly requires benefits to be
calculated based on wages reflected on an employee's Form W-2.
It cannot reasonably be construed to authorize the use of
Tierney's annualization method.  Accordingly, Sims has not
alleged sufficient facts to support a viable equitable estoppel

18

claim.

## IV.   <u>CONCLUSION</u>

For the reasons provided above, I grant the APWABA's motion

for judgment on the administrative record (Doc. No. 65), and

deny Sims' motion (Doc. No. 61).

SO ORDERED.


<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge


August 30, 2013

cc:   William P. Sims, Jr.
      Jonathan M. Conti
      Michael A. Feinberg
      Charles B. Doleac
      Susan Aileen Lowry